**Dave FASS et al., Plaintiffs,**

v.

**Frederick ROOS et al., Defendants.**

**Civ. A. No. 1060–59.**

United States District Court
D. New Jersey.

June 2, 1960.

Joseph L. Freiman, Union City, N. J., for plaintiffs.

Samuel L. Hirschberg, West New York, N. J., for defendants Roos and Casper.

David D. Furman, Atty. Gen. of New Jersey, pro se and for defendant Whipple.

Charles Crabbe Thomas, Camden, N. J., for amicus curiae, American Civil Liberties Union, South Jersey Chapter.

Before McLAUGHLIN, Circuit Judge, and HARTSHORNE and MORRILL, District Judges.

McLAUGHLIN, Circuit Judge.

In this case, which attacks the constitutionality of the 1959 New Jersey Sunday Closing Act (N.J.S.A. 2A:171–5.8 to 5.18), on December 11, 1959, we denied an application for a preliminary injunction. At that time the New Jersey case calling for a construction of the Act, Two Guys From Harrison, Inc., et al. v. Furman, 1959, 58 N.J.Super. 313, 156 A.2d 57, was on appeal to the state's highest court and had not been argued. On March 28, 1960, while the Two Guys suit was pending and undecided, plaintiffs filed a petition in this cause. They alleged that there had been no decision in Two Guys, that meanwhile they had been forced to remain closed on Sundays and that it would be impossible for them to continue in business if that condition continued. They asked that the stay of these proceedings allowed by our order of December 11, 1959 be vacated and that a rehearing on the application for a preliminary injunction be had and that a preliminary injunction issue restraining defendants from interfering with the conduct of plaintiffs' business on Sundays. Prior to this rehearing, the opinion in Two Guys was filed. It up-

held the constitutionality of the 1959 Act against the attacks before the court; it remanded for trial the allegation in the complaint that the statutory classification is arbitrary and denies equal protection of the law. In connection with the rehearing plaintiffs asserted certain points based on the state court opinion. These are covered infra.

. The complaint alleges that the statute is unconstitutional as against the plaintiffs, (1) because it constitutes a law respecting religion; (2) because it prohibits the free exercise of religion; (3) because the specification of the goods forbidden for sale on Sunday and the exclusion of all other goods are irrational and arbitrary; (4) because the law provides for local option, i. e. it gives the various counties in the state the individual right to accept or reject it.

Taking up the first two questions, the state Supreme Court has now said in its Two Guys opinion [1] that the New Jersey Sunday Closing Law "cannot be identified in its operative provisions with any sectarian tenet." It categorically holds that the statute cannot be stamped as religious because it "in terms follows no sectarian line. The presumption of constitutionality does not yield so easily." In the discussion concerning the 1951 New Jersey Sunday Closing Law, N.J.S.A. 2A:171–1 et seq., which it concludes is superseded by the 1959 Act, the opinion states: "The question whether the legislative decision impinges upon the freedom of those who observe religiously the seventh day of the week may be another matter. See Crown Kosher Super Market of Mass., Inc. v. Gallagher, supra (176 F.Supp. 466). It is not before us, and we intimate no view." In its brief the state makes no comment on the situation above disclosed. Nor has there been any move by either side for rehearing for the possible clarification of the court's position on these points.[2] Actually the two questions were squarely before the court in the Two Guys complaint, paragraph 17(b) which reads: "Said statute is invalid in that it * * * is a law respecting the establishment of religion and denying the free exercise of religion and is violative of the provisions of the First and Fourteenth Amendments

1. 1960, 32 N.J. 199, 160 A.2d 265, 279.

2. A petition for rehearing on other grounds has been filed.

of the Constitution of the United States and are violative of Article 1, Paragraph 4 of the Constitution of the State of New Jersey." There is no indication in the state opinion that this position was ever abandoned. Nor was any motion made to dismiss those particular charges. Plaintiffs say that Two Guys From Harrison, Inc. in the New Jersey litigation could not have urged the religious grounds as it is a corporation. This contention is contrary to the fact and the very decision upon which plaintiffs rely. Crown Kosher Super Market of Mass. v. Gallagher, D.C.Mass.1959, 176 F.Supp. 466, 472, makes it at least questionable.[3] Nevertheless, assuming plaintiffs' assertion to be correct i. e. that the state court has not as yet ruled on the contention that the 1959 law denies the practice of certain religions, the proposition that it does is, of course, still insisted upon by plaintiffs under the Crown Kosher doctrine. And that precise question is currently before the United States Supreme Court. In the latest decision dealing with the subject, an Eastern District Pennsylvania three judge court dismissed the complaint.[4] An appeal has been taken by plaintiffs to the United States Supreme Court. The Supreme Court will undoubtedly accept it for full argument along with the three similar appeals to be heard by it.[5]

The arbitrary classification as noted has not been disposed of by the New Jersey Supreme Court. The remaining contention, local option, warrants no discussion at this time.[6]

With plaintiffs themselves affirmatively insisting that the religious questions before us and raised by the Two Guys complaint in the state cause have not been as yet passed upon by the state court; with those questions themselves now before the United States Supreme Court for consideration and determination; with the New Jersey Sunday Closing Law having been generally upheld by the Supreme Court of that state and the arbitrary classification charge not finally concluded, we are satisfied that plaintiffs have not sustained their heavy burden of establishing their right to a preliminary injunction against enforcement of the state criminal statute involved. A federal court cannot interfere where the proceedings are already pending in a state court nor enjoin future prosecutions under the statute in question unless the statute provides such enormous penalties as to preclude testing its validity in the state courts. Cline v. Frink Dairy Co., 1927, 274 U.S. 445, 451–453, 47 S.Ct. 681, 71 L.Ed. 1146; Fenner v. Boykin, 1926, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927; Ex parte Young, 1908, 209 U.S. 123, 146–148, 28 S.Ct. 441, 52 L.Ed. 714. In none of the suits on appeal to the Supreme Court of the United States is there a preliminary injunction against the state other than in Crown Kosher where it necessarily appears because that court held the Massachusetts' Act, M.G.L.A. c. 136, § 1 et seq., unconstitutional. While plaintiffs may be sustaining some economic inconvenience and loss, under the facts and perti-

---

3. In addition to the religious objections appearing in the Two Guys suit, they are also directly before the New Jersey courts in the appeal from the conviction of these plaintiffs in the Magistrate's Court of West New York, New Jersey, for violation of the Sunday Closing Law. On appeal, the case was tried de novo in the Hudson County Court. Decision was reserved first, because the state Supreme Court had not filed its opinion in Two Guys and second, because the religious objections to the statute's constitutionality were before this court.

4. Braunfeld et al. v. Gibbons et al., D.C. E.D.Pa.1959, 184 F.Supp. 352.

5. Two Guys from Harrison-Allentown, Inc. v. McGinley, D.C.E.D.Pa.1959, 179 F. Supp. 944; McGowan v. Maryland, 1959, 220 Md. 117, 151 A.2d 156; Gallagher v. Crown Kosher Super Market of Mass., Inc., D.C.Mass.1959, 176 F.Supp. 466.

6. As to both this local option point and that of arbitrary classification see the very recent New Jersey Supreme Court opinion in Masters-Jersey, Inc. et al. v. Mayor and General Council of Borough of Paramus, N.J., 160 A.2d 841.

nent law they have not shown the irreparable injury required by this type of action in order for us to rightfully enjoin the state law involved. Cline v. Frink Dairy Co., supra; Fenner v. Boykin, supra, Ex parte Young, supra.

With respect to the state criminal enforcement phase of this case, we are as always deeply appreciative of the true and unfailing courtesy of the Hudson County Court. However, again assuming that the New Jersey Supreme Court to date has not considered the mentioned religious phases of the constitutional issues in connection with that state's closing law, it is of course, important that it have the opportunity to do so at the earliest practicable moment. Since the petition for rehearing in Two Guys does not touch these and there is nothing else that we are aware of before the state court bearing on them, we sincerely hope for a prompt ruling in the criminal appeal by the Hudson County Court. Appeal from such a judgment would be then available to the state Supreme Court for its early consideration and determination. As we have stated, under the facts and law we have no right to interfere at this time in the criminal action pending against the plaintiffs. Fenner v. Boykin, supra, 271 U.S. at pages 243–244, 46 S.Ct. at page 493. And generally we adhere to what is sound federal practice in awaiting the construction by the New Jersey courts of any remaining constitutional questions arising out of that state's Sunday Closing Law. Harrison v. N. A. A. C. P., 1959, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152; County of Allegheny v. Frank Mashuda Co., 1959, 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed. 1163; Martin v. Creasy, 1959, 360 U.S. 219, 79 S.Ct. 1034, 3 L.Ed.2d 1186.[7] The state courts have proceeded with all reasonable expedition in dealing with the complexities of the 1959 law and will, we know, continue so to do.

Plaintiffs' application for vacation of the stay and for a preliminary injunction against the enforcement of the Sunday Closing Act as to them will be denied. Further proceedings in the case will be stayed as stated in the prior order of this court until after the New Jersey Supreme Court has reached a final determination in the above referred to suit of Two Guys From Harrison, Inc., et al. v. Furman. In addition further proceedings in this case will be stayed until the pending criminal proceedings under the Sunday Closing Act in the Hudson County Court against plaintiffs have been finally concluded and until final determination by the United States Supreme Court of the Sunday Closing appeals now before it or until further order of this Court.

In the light of the situation above outlined, defendants' motion to dismiss the complaint will be denied.

MORRILL, District Judge (dissenting in part).

While it is true that the construction given by the state courts to a state statute is binding upon federal courts, Albertson v. Millard, 345 U.S. 242, 73 S.Ct. 600, 97 L.Ed. 983, we are not bound by the characterization given to such statute, Society For Savings in City of Cleveland, Ohio v. Bowers, 349 U.S. 143, 75 S.Ct. 607, 99 L.Ed. 950. And the federal courts do have the last word on questions involving the federal constitutionality of state statutes. Leiter Minerals, Inc. v. United States, 1957, 352 U.S. 220, 229–230, 77 S.Ct. 287, 1 L.Ed.2d 267. Thus, the question of whether the 1959 Act did or did not repeal most of the 1951 revision is not open to us. But there is still open to us the question of whether the categorization is arbitrary under the Fourteenth Amendment of the federal Constitution and the question of whether the 1959 Act violates the religious provision of the First Amendment.

As to the latter question, I make this brief observation: the Supreme Court of New Jersey in the Two Guys case, ob-

7. The latest reported three judge federal decision presenting the federal view on this subject is England v. Louisiana State Board, etc. et al., D.C.E.D.La.1960, 180 F.Supp. 121, 124.

served that "we cannot say that Sunday may not constitutionally be selected by the Legislature in pursuit of a purpose to provide relief from the routine. [citations] The question whether that legislative decision impinges upon the freedom of those who observe religiously the seventh day of the week may be another matter."

The doctrine of abstention from deciding cases involving a federal constitutional issue where a state court determination of state law might moot the issue or put the case in a different posture naturally has given me pause. Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 921; A. F. L. v. Watson, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873; Government and Civic Employees Organizing Committee, C. I. O. v. Windsor, 353 U.S. 364, 77 S.Ct. 838, 1 L.Ed.2d 894; Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058; Harrison v. N. A. A. C. P., 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152; County of Allegheny v. Frank Mashuda, 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163, and Martin v. Creasy, 360 U.S. 219, 79 S.Ct. 1034, 3 L.Ed.2d 1186. These cases teach us that "no matter how seasoned the judgment of the district court may be, it cannot escape being a forecast rather than a determination," that we "should not adjudicate the constitutionality of state enactments fairly open to interpretation until the state courts have been afforded a reasonable opportunity to pass upon them," and that there exists "the desirability of avoiding unseemly conflict between two sovereigns, the unnecessary impairment of state functions, and the premature determination of constitutional questions." But as was said in the Mashuda case, supra, the doctrine of abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." [360 U.S. 185, 79 S.Ct. 1063.]

On 11 December 1959, this court abstained even from granting preliminary relief, what with an impending argument before the highest New Jersey Court on the 1959 Act. I dissented. Argument was in fact had on 22 December 1959, and a decision was rendered on 4 April 1960. While the 1959 Act was held not to be invalid on its face, the case was remanded to the trial court for resolution of the allegation that the classification of the Act is in fact arbitrary and denies equal protection to the plaintiffs in the State suit. That resolution probably will not be made until the fall of this year and a further appeal to the Supreme Court of New Jersey is not unlikely.

Where does all this leave the plaintiffs? The plaintiff Fass was arrested on 29 November 1959 for selling on Sunday an article in a prohibited category and on 17 December 1959, in the Municipal Court of West New York, he was convicted under the 1959 Act. An appeal to the Hudson County Court followed and Fass raised constitutional questions there. The County judge, noting that these constitutional questions were pending before the Supreme Court of New Jersey and before this court, said that: "It would be inexpedient and fruitless for me to attempt to decide the constitutional questions on this appeal. I therefore reserve decision on the constitutional questions until the other tribunals have spoken." Thus, there is no conviction in the County Court which plaintiff Fass can appeal. This court awaits final word from the Supreme Court of New Jersey, while that court awaits a possible appeal from a determination on the remand referred to above. In the meantime, the plaintiffs must sit by helplessly and continue to be harmed because legal formulas are worshipped.

We can grant *temporary* relief without deciding federal constitutional questions prematurely, without forecasting what the final state decision will be on the claimed arbitrariness of the classification, without creating an unseemly conflict between sovereigns and without impairing any state function. An abstention from *final* adjudication does not necessarily carry with it an abstention on all *interlocutory* phases of a federal ac-

tion. This is at least implicit in Harrison v. N. A. A. C. P., 360 U.S. 167, 179, 79 S.Ct. 1025, 3 L.Ed.2d 1152. I would therefore enjoin the defendants temporarily from enforcing the statute against the plaintiffs and those in a like position who in fact observe Sabbath on a day other than the first day of the week, "commonly known as Sunday," and who do not, pursuant to such observance, sell or engage in selling any of the categorized merchandise on their Sabbath. This limited and conditional injunctive relief would prevent irreparable harm if not ultimately certain disaster to the plaintiffs, and would not, I daresay, rock the social foundations of the State of New Jersey. After all, as the court said in Two Guys, "It is perfectly plain that in adopting chapter 119 the Legislature contemplated that citizen activities beyond its interdiction will continue unscathed," at least insofar as state legislation is concerned. Masters-Jersey, Inc., et al. v. Mayor and General Council of Borough of Paramus, N.J., 160 A.2d 841. And let us not forget that the 1959 Act is in effect in but 12 of the 21 counties of New Jersey.

As to enjoining state prosecutions, Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, does set forth the general rule but it also says there are exceptions. Ordinarily, if Fass' criminal case was pursuing its normal course I would not seek to enjoin it; but, as shown above, there is a stalemate and there is no need to enjoin further prosecution of that case. I would enjoin further prosecutions brought to enforce a statute which is alleged to be unconstitutional. Exceptions to the general rule are pointed out also in Cline v. Frink Dairy Co., 274 U.S. 445, 47 S.Ct. 681, 71 L.Ed. 1146 and in Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927. See also Denton v. City of Carrollton, 5 Cir., 235 F.2d 481.

In balancing the equities, I find that they are strongly in favor of the plaintiffs. I believe, too, that the plaintiffs are suffering more than financial inconvenience. Apart from the money loss, who can admeasure the amount of the penalty the plaintiffs pay for observing a religion that does not conform to the religions of those who may, at once, enjoy a day of common rest and recreation while observing the sacredness of their religious Sabbath.

I do not think the Chancellor's foot is ossified. "Equitable remedies * * * are distinguished by their flexibility, their unlimited variety, their adaptability to circumstances, and the natural rules which govern their use. There is in fact no limit to their variety and application; the court of equity has the power of devising its remedy and shaping it so as to fit the changing circumstances of every case * * *." 1 Pomeroy, Equity Jurisprudence 141 (5th ed.). To the same effect, see United States v. Morgan, 307 U.S. 183, 59 S.Ct. 795, 83 L.Ed. 1211 and Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754. And in West's Symboleography (1605), equity is described as a "ruled kind of justice" which is "allayed with the sweetness of mercy, and may well be compared to a shoemaker's shop, that is furnished with all manner and sorts of lasts for men's feet, where each man may be sure to find one last or other that shall fit him, be he great or small."

My Brethren deny the defendants' motion to dismiss the complaint. Since jurisdiction in this case is not based on diversity of citizenship, the denial must be based on the existence of a substantial federal question. If there is no such question, there is no place for the doctrine of abstention, and dismissal should follow. I concur in this denial. It is this substantial federal question which is the basis for affording the plaintiffs the type of relief I have suggested.